**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YAN TSANG et. al., | ) | |
| individually and on behalf | ) | |
| of similarly situated persons, | ) | |
| | ) | Case No. 15-cv-11160 |
| Plaintiffs, | ) | |
| | ) | Hon. Samuel Der-Yeghiayan |
| v. | ) | |
| | ) | |
| ZARA USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE PLAN**

NOW COMES Plaintiff Yan Tsang, the proposed class representative, by and through his counsel and moves this Honorable Court to grant preliminary approval to the class settlement agreement between Plaintiff and Defendant Zara USA, Inc., a copy is attached as Appendix 1, and to approve the proposed direct class notice plan.

In support of this motion, the Parties state:

1.      This matter was brought by Plaintiff, individually and on behalf of a class of persons defined in the Complaint, alleging that Defendant had willfully violated the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").   Specifically, Plaintiff claims that Defendant willfully violated 15 U.S.C. § 1681c(g)(1) in that Plaintiff received from Defendant during an in-store purchase a printed computer-generated receipt at the point of sale which displayed Plaintiff's first six digits of his payment card's account number, in addition to the last four digits of his account number, after the do not print more than the last five digits of the payment card requirement of 15 U.S.C. § 1681c(g)(1) was received by, and was known by Defendant.

2.     Plaintiff, individually and on behalf of a class of all similarly situated persons in the United States who made an in store purchase at Zara, sought statutory damages in the amount of $100 to $1,000 per willful violation.  Plaintiff did not seek any actual damages beyond the amount provided as statutory damages either individually or on behalf of a class.

3.     Plaintiff issued written discovery in this matter and the Parties subsequently engaged in the settlement discussions that ultimately culminated in the Settlement Agreement.

4.     On April 12, 2016, the parties conducted a face-to-face settlement conference with Magistrate Judge Gilbert.  Plaintiff, who flew in from Virginia, and his counsel were in attendance.  Defendant's counsel attended along with Defendant's General Counsel, who flew in from New York.  The arms-length compromises and settlement on material terms achieved at the settlement conference are contained herein.  The parties further negotiated and compromised upon issues related to the form of the notice that would be provided to the class and selection of a claims administrator.   "Courts also encourage parties to settle class actions early, without expending unnecessary resources."  *McCue v. MB Fin., Inc.,* 15-cv-988, 2015 U.S. Dist. LEXIS 96653 * 9 (N.D. Ill. July 23, 2015) (*citing Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013) ("early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

5.     Defendant denies liability to Plaintiff and the class for the claims alleged therein but considers it desirable that the action and the claims alleged therein be settled.  After considering the substantial benefits that the Class will receive under this Settlement Agreement,

up to $100 in cash per transaction.[1]  Defendant has indicated that it will vigorously oppose class certification and the merits of the case, and thus against this backdrop and the attendant risks, uncertainties and delays of litigation, Plaintiff and Class Counsel have concluded that it is fair, equitable and in the interest of Plaintiff and the Settlement Class to resolve the Lawsuit upon the terms and conditions provided for in this Settlement Agreement.

6.    The Parties desire to settle the action based upon the terms and conditions set forth in the Settlement Agreement executed by the Parties, attached hereto as Appendix 1.

7.    For settlement purposes only, the Parties have stipulated to the certification of a class defined as:

> All persons to whom Zara USA provided an electronically printed receipt at the point of sale in a transaction occurring inside one of Zara's stores in the United States, from April 28, 2015, to July 1, 2015, which displayed the credit card's first six digits.  The class includes debit cards that were used as credit cards without a PIN being used, but excludes debit cards in which a PIN was used.

8.    For settlement purposes only the class as defined above meets all the requirements of Rule 23.  Specifically:

(a) Rule 23(a)(1): Class members are ascertainable and so numerous that joinder of all members is impracticable. During the class time period there were approximately 4,245 qualifying payment card transactions corresponding to approximately 3,859 unique records during the settlement class time period;

(b) Rule 23(a)(2):  There are questions of law or fact common to the Class, and there is a well-defined community of interest among Class members with respect to the subject matter

---

[1] A successful Plaintiff under the FCRA can receive $100 to $1,000 per violation. 15 U.S.C. § 1681n(a).  However the Act has been interpreted in two distinct ways allowing for that amount per transaction, *Brittingham v. Cerasimo, Inc.*, 621 F. Supp. 2d 646, 648 (N.D. Ind. 2009), *but see Stillmock v. Weis Mkts., Inc.*, 2010 U.S. App. LEXIS 13508 * 23 (4th Cir. July 1, 2010) ("the court adopts a per-consumer rather than a per-receipt interpretation of 15 U.S.C. § 1681n(a).").

of the Litigation which include: (i) Whether Zara USA, Inc., violated 15 U.S.C. § 1681c(g)(1); and (ii) Whether Defendant's conduct amounted to a "willful" violation of 15 U.S.C. § 1681c(g)(1);

(c) Rule 23(a)(3): The claims of Plaintiff are typical of the claims of Class members as they each arise from Defendant's use of a point of sale terminal that printed in addition to the last for digits of the payment card's account number, the first six numbers of the account.

(d) Rule 23(a)(4): Plaintiff has fairly and adequately protected the interests of the Class and has attended a settlement conference in which an agreement between the parties was reached. Curtis C. Warner of Warner Law Firm, LLC is qualified to serve as counsel for the Class. Attached as Appendix 2 is the Declaration of Curtis C. Warner in support;

(e) Rule 23(b)(3):

(i) Common Questions of law or fact predominate over individual questions, as discussed above regarding the electronic printing of receipts that contained too many digits of the payment card's account number and whether that conduct was "willful";

(ii) A class action is superior to other available methods for an efficient adjudication of this controversy and consumer class actions are frequently certified as classes.

9. Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this action and have weighed the benefit to the class members against the risks and expense involved in pursuing the litigation to conclusion, the protracted nature of the litigation and the likelihood, costs and possible outcome of one or more procedural and substantive appeals. Based on their review and analysis, Plaintiff and Defendant entered into the Settlement Agreement.

10. Pursuant to the Settlement Agreement, the Parties have agreed to the settlement of

this action on the material financial terms as follows:

(a)    Creation of a Common Fund / Relief to Members of the Class: The Settlement Agreement calls for the creation of a $424,500 (four hundred twenty-four thousand five hundred dollar) settlement fund with up to $340,100 (three hundred forty thousand dollars) being available for the approximately 3,859 settlement class members to make a claim up to $100 per transaction and the allocation of making available 20% of the total payments paid to the Settlement Class Members from the common fund, up to $84,900, for the payment of attorney's fees;

(b)    Relief to the Named Plaintiff: Subject to Court approval, Defendant shall pay Plaintiff $10,000 as his statutory damages and as an incentive award as serving as the class representative.  Plaintiff personally attended the settlement conference, flying in from Virginia, which resulted in an agreement between the Parties to resolve this matter on a class basis.  Courts have approved similar incentive awards in cases brought under 15 U.S.C. § 1681c(g)(1), *Aliano v. Joe Caputo and Sons-Algonquin, Inc.*, 09 C 910, Doc. 296, (N.D. Ill. July 12, 2012) ($10,000), and is below other incentive awards.  *See e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (upholding challenge to $25,000 incentive award).

(c)    Attorney's Fees: Subject to Court approval, Defendant shall from the common fund make available to be paid to Class Counsel 20% of the total payments paid to the Settlement Class Members from the common fund, up to $84,900 for the payment of attorney's fees. Two weeks prior to the proposed objection submission deadline, Plaintiff's counsel will file a petition for attorney's fees under a common fund theory as set forth in the Settlement Agreement.

(i) Structuring class counsel's attorney's fees in such a manner, "gives class

counsel an incentive to design the claims process in such a way as will maximize the settlement benefits actually received by the class, rather than to connive with the defendant in formulating claims-filing procedures that discourage filing and so reduce the benefit to the class." *See Person v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014).

(ii)  The attorney's fees sought of 20% of the total payments paid to the Settlement Class Members from the common fund are reasonable and are tied to the amount of the common fund claimed by the settlement class members.  *See Id.* at 782 ("attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.")

(iii)  "Awarding attorneys' fees through a percentage of a common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a larger fee." *McCue*, 2015 U.S. Dist. LEXIS 96653 * 7 (*citing In re Synthroid Mktg. Litig.,* 325 F.3d 974, 979-80 (7th Cir. 2003)) ("explaining benefits of the percentage of fund method are that if 'class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves'").

(d)  All costs of notice and administration of the settlement shall be paid by Defendant in a manner set forth in the Settlement Agreement and are paid in addition to the $424,500 settlement fund.  Such a provision requiring the Defendant to pay for notice outside of any common fund is proper.  *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

(e)  The Settlement Agreement contains a reversion clause so that all monies left from the common fund after the distributions to the Settlement Class Members and the payment of attorney's fees will revert back to Zara USA, Inc., if not claimed by the settlement class

members. Certain reversion clauses are known as "kicker clauses" that "provides that if the judge reduces the amount of fees that the proposed settlement awards to class counsel, the savings shall enure not to the class but to the defendant." *NBTY,* 772 F.3d at 786. The reversion here, however, is to an amount unclaimed by the settlement class members that is left in fund; the attorney's fees are tied to the amount claimed by the Class Members. Thus the reversion in this case is not the type of kicker clause that raised concern by Seventh Circuit in *NBTY*.

(f) The Settlement Agreement contains a *cy pres* provision to a 501(c)(3) charity Dress for Success that is triggered only if a claiming class member fails to cash their check within 45 days of issuance. "A *cy pres* award is supposed to be limited to money that can't feasibly be awarded to the intended beneficiaries, here consisting of the class members." *NBTY*, 772 F.3d at 784.

11. The Notice Plan and Proposed Dates:

a. **Direct Notice:** Notice to the Settlement Class Members shall be provided by direct mail by the Notice and Claims Administrator using only addresses identified by the Notice and Claims Administrator. The Notice and Claims Administrator (Heffler Claims Group) will perform locator searches based upon the names provided by Zara USA, and the proximity to store locations, followed by nationwide searches in certain instances, to determine the mailing addresses of likely Settlement Class Members. The Claims Administrator shall give direct notice to each Settlement Class Member by sending the Notice of Class Action Settlement (the "Class Notice"), via a post card notice, a copy of which is attached as (Exhibit A) to the settlement agreement. Such notice will be mailed 60 days after preliminary approval of the Settlement Agreement (the "Notice Mailing Date").

B. **Website:** On or before 60 days after the entry of the preliminary approval Order, Zara shall cause the Settlement Website as identified in the Settlement agreement at www.SettlementZara.com to be made available on the world wide web to be able to accept the claims of the settlement class members to submit electronically, and shall provide the full class notice, (Exhibit B) attached to the settlement agreement, FAQ's about the settlement and notice that they can obtain a printable claim form, and the complaint and fee petition.

12. The parties and their counsel believe that settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable and adequate, and would be in the best interests of the members of the Class.

13. The Agreement provides and the proposed order states as a provision for the Court to enter that, "pending the Fairness Hearing and the Effective Date, Plaintiff, and all members of the Settlement Class, are enjoined from commencing or prosecuting, either directly or indirectly, any action asserting any of the Released Claims against any of the Released Parties unless they first have timely exercised their right to Opt-Out or otherwise excluded themselves from participation in this Settlement and such Opt-out or exclusion has been received." It would be proper under Rule 1 to enter the injunction, as if final approval is granted it would end all litigation against Zara related to the claims asserted except for those class members who individually opt-out from the agreement and are free to pursue their individual claims.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an Order Preliminarily Approving the Class Action Settlement which:

(i)     Grants preliminary approval of the purposed settlement;

(ii)    Approves and orders the direct notice as set forth in the Settlement Agreement;

(iii)   Appoints Plaintiff as the class representative;

(iv)   Appoints Curtis C. Warner of Warner Law Firm, LLC as class counsel;

(v)    Sets dates for claims to be made, opt outs, petition for attorney's fees and

objections to be submitted; and

(vi)   Schedules a hearing for final approval of the class settlement.

Respectfully submitted,

s/ Curtis C. Warner
   Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
350 S. Northwest HWY, Ste. 300
Park Ridge, IL 60068
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com